24CA1539 Marriage of Kowalik 07-24-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1539
Arapahoe County District Court No. 21DR800
Honorable Michelle Jones, Judge

In re the Marriage of

Anne Patricia Kowalik,

Appellant,

and

Thaddeus Stefan Kowalik,

Appellee.

ORDER AFFIRMED

Division II
Opinion by JUDGE SCHUTZ
Fox and Harris, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 24, 2025

Allen Vellone Wolf Helfrich & Factor P.C., James S. Helfrich, Denver, Colorado;
Meyers Family Law, Thomas A. Meyers, III, Littleton, Colorado for Appellant

Anne Whalen Gill L.L.C., Anne Whalen Gill, Castle Rock, Colorado, for Appellee

¶ 1    In this post-dissolution of marriage case involving Anne Patricia Kowalik (wife) and Thaddeus Stefan Kowalik (husband), wife appeals the district court's attorney fee award in connection with her motion to enforce the parties' separation agreement. We affirm.

## I.    Relevant Facts

¶ 2    The parties' marriage ended in May 2022. The dissolution decree incorporated their separation agreement. In it, husband promised to pay wife approximately $375,000. The agreement also contained a mutual indemnification provision:

> Each party shall indemnify the other with respect to any debt or obligation assigned to him or her by this Agreement and shall pay any costs, interest, penalties, and attorney's fees to the non-liable party in enforcing or defending the terms of this Agreement, whether such enforcement or defense is by contempt proceedings or otherwise.

¶ 3    Soon after, husband's former attorney, Randy Corporon, believing he was following instructions from wife and her former attorney, Danielle Demkowicz, wired $374,290 from his Wells Fargo trust account to a hacker in Hong Kong. The funds were never recovered.

¶ 4     Wife retained another family law attorney, Thomas Meyers III, to replace Demkowicz. Wife then hired attorney James Helfrich, a commercial litigator, to investigate and pursue potential claims against various parties, including Demkowicz, Wells Fargo, and husband. Under the fee agreement with wife, Helfrich charged a 25% reduced hourly rate, with payment dependent on collecting money from husband or another party. Through Helfrich's efforts, wife eventually received a $94,869 recovery from Demkowicz's malpractice carrier, which was the full policy limit minus defense costs.

¶ 5     Acting through Meyers and Helfrich, wife thereafter moved to enforce the separation agreement against husband. The district court granted the motion, determining that Corporon had acted within the scope of his agency when he mistakenly wired the funds to the hacker, and that husband, as principal, was liable for the resulting loss. Wife sought $74,249 in attorney fees for work performed by Helfrich's law firm for both securing the settlement with Demkowicz's malpractice carrier and enforcing the separation agreement against husband.

¶ 6    The district court held an evidentiary hearing to determine the reasonableness of the requested attorney fees. The court first excluded $6,810 in fees, representing 19.8 hours Helfrich billed for work related to the malpractice settlement. Regarding the remaining fees for enforcing the settlement agreement, the court reduced the number of hours after concluding that the billing was excessive and duplicative of Myers's services. The court subtracted an additional ten hours for legal tasks related to the malpractice settlement that it concluded were embedded within the enforcement billing. Ultimately, the court awarded wife $17,491, consisting of: (1) $15,471 for 51.57 hours of work performed by Helfrich at a rate of $300 per hour; and (2) $2,020 for 20.20 hours of paralegal or clerk work at a rate of $100 per hour.

¶ 7    After the district court denied her motion to reconsider, wife appealed.

## II.    Attorney Fees

¶ 8    Wife contends the district court erred by (1) denying her the $6,810 in attorney fees incurred to pursue the malpractice settlement; and (2) removing ten hours from the billing attributed to the claim against husband because the disputed entries pertained

to potential claims against other parties. We address her contentions in turn.

### A. Standard of Review and Applicable Law

¶ 9 All attorney fee awards must be reasonable. *Tisch v. Tisch*, 2019 COA 41, ¶ 84. Reasonableness is a question of fact for the district court, *Payan v. Nash Finch Co.*, 2012 COA 135M, ¶ 16, and we will not overturn its determination unless it is "patently erroneous and unsupported by the evidence." *Tallitsch v. Child Support Servs., Inc.*, 926 P.2d 143, 147 (Colo. App. 1996).

¶ 10 Colorado has adopted the lodestar method for determining "reasonable" attorney fee awards. *In re Marriage of Aragon*, 2019 COA 76, ¶ 17; *Payan*, ¶ 18. To calculate the lodestar amount, the court first determines "the reasonable number of hours expended by counsel in working on the case." *Payan*, ¶ 21. After deducting excessive or redundant hours, the court then multiplies the hours reasonably expended by a reasonable hourly rate. *Id.* at ¶ 23. This lodestar calculation carries a strong presumption of reasonableness. *See Aragon*, ¶ 17.

¶ 11    The district court may, in its discretion, make upward or downward adjustments to the lodestar amount based on the factors identified in Colo. RPC 1.5(a). *Aragon*, ¶ 15.

¶ 12    A district court must make sufficient findings supporting its attorney fee award to allow meaningful appellate review. *Weston v. T & T, LLC*, 271 P.3d 552, 561 (Colo. App. 2011). We review those factual findings for clear error or an abuse of discretion. *In re Marriage of Young*, 2016 CO 2, ¶ 17. We review de novo whether the court correctly applied the law. *See In re Marriage of Gallegos*, 251 P.3d 1086, 1087 (Colo. App. 2010).

### B.    Attorney Fees Incurred in the Malpractice Settlement

¶ 13    Wife argues that the district court erred as a matter of law by excluding $6,810 in attorney fees billed in connection with her malpractice settlement. She contends that those fees were "consequential damages" that mitigated husband's harm from the fraudulent transfer and are thus recoverable. We disagree.

¶ 14    Colorado follows the American Rule regarding the payment of attorney fees. *In re Estate of Klarner*, 113 P.3d 150, 157 (Colo. 2005). Under the American Rule, "the parties in a lawsuit must bear their own legal expenses, absent statutory authority, a court

5

rule, or an express contractual provision to the contrary." *In Interest of Delluomo v. Cedarblade*, 2014 COA 43, ¶ 9. Parties can opt out of the American Rule by including a fee-shifting provision in their separation agreement, as the parties did here.

¶ 15     Their separation agreement allows recovery of "costs, interest, penalties, and attorney fees" incurred "in enforcing or defending the terms of [the] [separation] [a]greement, whether such enforcement or defense is by contempt proceedings or otherwise." Pursuant to that provision, wife requested $6,810 in attorney fees, submitting Helfrich's invoices showing 19.8 hours of legal work related to obtaining the malpractice settlement, billed at rates ranging from $338 to $356 per hour. The district court denied the request, determining that "the time spent on asserting a malpractice claim against [Demkowicz], and then obtaining a settlement of that claim should not be charged against [husband]."

¶ 16     We conclude that the district court properly exercised its discretion by excluding the $6,810 from the attorney fee award. The separation agreement does not authorize the recovery of attorney fees incurred in pursuing third-party litigation. Wife's malpractice action against Demkowicz was a separate legal matter

not tied to husband's performance under the separation agreement. Her decision to pursue multiple avenues of relief does not mean that husband must bear fees unrelated to the enforcement of the separation agreement.

¶ 17     Wife nevertheless asserts that the district court misapplied the law by failing to treat the attorney fees as "consequential damages" that mitigated the harm caused by Corporon's improper transfer of the funds. She relies on *Double Oak Const., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 150 (Colo. App. 2003). But that case does not help her. It has been overruled by *L.H.M. Corp., TCD v. Martinez*, 2021 CO 78. But even if some portion of *Double Oak* remains good law, the case does not stand for the proposition that attorney fees from a separate action against a different party qualify as consequential damages merely because the subject matter of the litigation is related. Attorney fees in *Double Oak* were only allowed as damages because the fees were directly attributable to the tort claims being litigated. *Double Oak Const.*, 97 P.3d at 150 ("[T]he [district] court awarded attorney fees as *actual damages* under the theory that, but for defendants' obdurate conduct, plaintiff would not have incurred attorney fees in pursuing its judgment.")

(emphasis added).  That is not the case here.  The malpractice settlement fees arose from separate litigation against a different party, Demkowicz, not husband.  And husband was not alleged to have engaged in any wrongdoing in the malpractice litigation.

¶ 18    Because the district court applied the correct legal standard, made the necessary findings, and those findings have record support, we discern no error.

### C.    Deduction of Ten Hours Related to the Settlement

¶ 19    Wife also argues that the district court erred by deducting ten hours from Helfrich's enforcement billing on the basis that those hours were improperly attributed to work on the malpractice settlement.  Again, we disagree.

¶ 20    The district court found that, beyond the 19.8 hours that Helfrich had already billed separately, some of the billing entries for the action against husband also included notes reflecting work on third-party litigation, including the malpractice settlement.  For example, the court noted that the billing entries included:

- On June 27, 2022, assessing "potential claims against Wells Fargo."

- On August 18, 2022, reviewing wife's "standing for possible claims" against Wells Fargo.

- On November 8, 2022, calculating "damages for a settlement offer."

- On November 21, 2022, participating in "settlement discussions."

- On December 5 and 13, 2022, communicating about a third party settlement rejection.

Instead of combing through the seven pages of billing records, each containing dense and ambiguous notes, the court deducted ten hours as a fair estimate of the overlap.

¶ 21    A district court is not required to analyze every disputed billing entry in detail. *See Payan*, ¶ 35 ("[W]e note that it is not the court's burden 'to justify each dollar or hour deducted from the total submitted by counsel. It remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero.'" (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986))).

¶ 22    Given wife's failure to substantiate the reasonableness of her fees through the billing records and in light of the broad discretion

afforded to district courts in these matters, we conclude that the district court did not abuse its discretion by imposing the ten-hour deduction to the claimed fees. *See Payan*, ¶ 35; *see also Tallitsch*, 926 P.2d at 147.

## III. Appellate Attorney Fees

¶ 23 Wife makes a request for an award of attorney fees incurred on appeal but does not identify any statutory or legal authority to support her request. So, we deny it. *See* C.A.R. 39.1 ("If attorney fees are recoverable for the appeal, the principal brief of the party claiming attorney fees must include a specific request, . . . and must explain the legal and factual basis for an award of attorney fees.").

## IV. Disposition

¶ 24 The order is affirmed.

JUDGE FOX and JUDGE HARRIS concur.