The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 7, 2025

**2025COA71**

**No. 24CA0934, *1046 Munras Properties, L.P. v. Kabod* —
Courts and Court Procedure — Attorney Fees; Contracts — Fee-
shifting Provisions — Fees-on-Fees**

This is the first Colorado decision to consider whether a
prevailing party may recover, under a contractual fee-shifting
provision, the attorney fees it incurred to enforce such provision,
known as "fees on fees."  A division of the court of appeals
concludes that, under the subject contracts' fee-shifting provisions,
the prevailing party is entitled to an award of fees on fees.

COLORADO COURT OF APPEALS     **2025COA71**

Court of Appeals No. 24CA0934
City and County of Denver District Court No. 22CV30453
Honorable Mark T. Bailey, Judge

1046 Munras Properties, L.P., a California limited partnership,

Plaintiff-Appellant,

v.

Kabod Coffee, a Colorado limited liability company; Muluye K. Hailemariam; and all other persons occupying such premises,

Defendants-Appellees.

ORDERS AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE LIPINSKY
Johnson and Moultrie, JJ., concur

Announced August 7, 2025

CYLG, P.C., Christopher A. Young, R. Anthony Young, Denver, Colorado, for Plaintiff-Appellant

Coakley, LLC, Eric R. Coakley, Denver, Colorado, for Defendants-Appellees

¶ 1     Although "Colorado courts follow the American rule, which requires parties to a lawsuit to pay their own legal expenses," there is an exception "if the parties agree, in a contract clause known as a fee-shifting provision, that the prevailing party will be entitled to recover its attorney fees and costs." *S. Colo. Orthopaedic Clinic Sports Med. & Arthritis Surgeons, P.C. v. Weinstein*, 2014 COA 171, ¶ 10, 343 P.3d 1044, 1046-47.  For this reason, we break no new legal ground in observing that "[c]ontractual fee-shifting provisions are generally valid under Colorado law." *Morris v. Belfor USA Grp., Inc.*, 201 P.3d 1253, 1260 (Colo. App. 2008).

¶ 2     But this is the first published case in Colorado to consider whether a prevailing party may recover, under a contractual fee-shifting provision, the attorney fees it incurred to enforce such provision, known as "fees on fees."  Although a division of this court has addressed whether a party awarded fees under section 13-17-102, C.R.S. 2024, is "automatically entitled to recover expenses incurred in pursuing such an award of fees," *Klein v. Tiburon Dev. LLC*, 2017 COA 109, ¶ 30, 405 P.3d 470, 477, the division's statutory analysis differs from the contractual interpretation we must undertake to resolve the fees on fees issue

1

in this case, *see id.* at ¶ 33, 405 P.3d at 478 ("An award of fees incurred in seeking fees under section 13-17-102 must be supported by a determination in the record that the sanctioned party's *defense* to the fees motion lacked substantial justification."); *see also Anderson v. Pursell,* 244 P.3d 1188, 1198-99 (Colo. 2010) (holding that a party was not entitled to recover the attorney fees it incurred in seeking attorney fees under section 13-17-102). We conclude that, under the subject contracts' fee-shifting provisions, the prevailing party is entitled to an award of fees on fees.

¶ 3     Plaintiff, 1046 Munras Properties, L.P., a California limited partnership (landlord), appeals the district court's (1) order reducing by 50% the amount of attorney fees landlord initially requested under three contractual fee-shifting provisions (the first order) and (2) order rejecting landlord's request for an award of the attorney fees and costs it incurred in obtaining the attorney fees award (the second order). We affirm, in part, and reverse, in part, the orders and award landlord its appellate attorney fees and costs.

## I.    Background

### A.    The Lease and the Guaranty

¶ 4    Defendant Kabod Coffee, a Colorado limited liability company (tenant), entered into a lease with landlord for retail space (the premises) at landlord's shopping center.  Tenant operated a coffee shop in the premises.  Defendant Muluye K. Hailemariam (guarantor) guaranteed tenant's performance under the lease.  (We refer to tenant and guarantor jointly as the Kabod parties.)

¶ 5    Article 5(A) of the lease provides that tenant must "continuously operate in the [p]remises during the [t]erm hereof," with exceptions not relevant to this appeal.  As applicable to this appeal, article 20(A)(ii) of the lease says that an event of default occurs if tenant fails "to observe and perform" any of its nonmonetary obligations under the lease and "such failure continues for ten (10) days after written notice thereof by [l]andlord to [t]enant."

¶ 6    Article 20(B) sets forth the remedies available to landlord if tenant defaults.  Article 20(B)(ii) specifies that, "[w]ithout terminating the [l]ease, [l]andlord may re-enter and take possession of the [p]remises and expel or remove [t]enant and any other person

occupying the [p]remises in accordance with applicable law without liability for prosecution of any claim for damages therefor."

¶ 7    In addition, paragraph 2 of the guaranty that guarantor signed provides, as relevant here, that she "absolutely, unconditionally and irrevocably . . . guarantees . . . the performance by [t]enant of all obligations of [t]enant under the [l]ease."

¶ 8    The lease contains two fee-shifting provisions, and the guaranty contains one.  Article 20(B) of the lease says, in relevant part, that, "[i]n addition to all other remedies of [l]andlord (including the right to seek specific performance), [l]andlord shall be entitled to reimbursement upon demand of all reasonable attorney[] fees and expenses incurred by [l]andlord in connection with any default."  In addition, article 40(I) of the lease provides,

> [i]f any party hereto is required to commence any action or proceeding against the other in order to enforce or interpret the provisions hereof, the prevailing pa[r]ty in such action shall be awarded, in addition to any amounts or relief otherwise awarded, all reasonable costs incurred in connection therewith, including attorney[] fees.

Paragraph 8 of the guaranty says that guarantor "agrees to pay all costs and expenses, including reasonable attorney[] fees, incurred

by [l]andlord in connection with the protection, defense or enforcement of this [g]uaranty."

### B.    The Default and the Lawsuit

¶ 9    In January 2022, landlord's property manager learned that tenant had closed its coffee shop in the premises.  Landlord provided tenant with written notice that tenant had breached the "continuous operations clause" of the lease by closing the shop.

¶ 10    Landlord filed a complaint against the Kabod parties in which landlord alleged, among other facts, that tenant had breached the lease's "continuous operations clause" by closing its coffee shop in the premises.  Landlord asserted three claims: for possession of the premises, for money damages from tenant, and for money damages from guarantor.

¶ 11    Following a forcible entry and detainer hearing, the court found that tenant was "in default under the [lease] by failing to continuously operate" its shop in the premises.  The court granted landlord's request for possession of the premises, and the case proceeded on landlord's money damages claims.

¶ 12     The Kabod parties filed a counterclaim in which they sought more than $1.1 million in damages for landlord's alleged breach of the covenant of good faith and fair dealing.

¶ 13     Following a bench trial, the court found in landlord's favor on its claims for breach of the lease and breach of the guaranty, ruled in favor of landlord on the Kabod parties' counterclaim, and entered judgment for landlord in the amount of $157,058.59 against the Kabod parties, jointly and severally.

¶ 14     Landlord subsequently filed a motion for attorney fees and costs (the attorney fees motion), in which it requested awards of $128,571.50 in attorney fees and $7,856.99 in costs under the fee-shifting provisions in the lease and the guaranty.  The Kabod parties responded that landlord was seeking an unreasonable amount of attorney fees and requested a hearing.  The court set a hearing on the reasonableness of landlord's requested attorney fees.

¶ 15     Before the hearing, landlord filed a supplement to the attorney fees motion (the supplement) in which it added to its request the attorney fees and costs it had incurred after the trial, including the attorney fees and costs it incurred in connection with drafting and filing the attorney fees motion (fees on fees).  Landlord requested a

total attorney fees award of $143,924: the $128,571.50 identified in the attorney fees motion plus an additional $15,352.50 in post-trial attorney fees, including those associated with the attorney fees motion. Similarly, in the supplement, landlord requested costs totaling $9,216.32 — the $7,856.99 identified in the attorney fees motion plus an additional $1,359.33 in post-trial costs, which landlord incurred, in part, in connection with the attorney fees motion.

¶ 16     The court issued the first and second orders following the attorney fees hearing.

¶ 17     In the first order, the court addressed the attorney fees and costs that landlord requested in the attorney fees motion. The court referred to the fee-shifting language in article 20(B) of the lease, but it did not address the fee-shifting language in article 40(I) of the lease or paragraphs 2 and 8 of the guaranty.

¶ 18     The court awarded landlord only $57,857.17 of the attorney fees landlord had requested in the attorney fees motion. The court calculated this figure by "dividing [landlord]'s request by 2 ($128,571.50 / 2 = $64,285.75) and then taking 10% off of $64,285.75." The court explained that it was reducing landlord's

7

attorney fees request by 50% because "not all of the hours for which [landlord sought] reimbursement were reasonably expended" and cutting the requested attorney fees by another 10% to account for "excessive or redundant" hours. (Landlord does not appeal the 10% reduction.)

¶ 19    In addition, the court found that landlord was "entitled to its costs under the lease and as the prevailing party in this action" and that landlord's "costs of $7,856.99 were reasonably incurred."

¶ 20    Although the court did not cite the guaranty in the first order, it awarded the specified amount of attorney fees and costs against tenant and guarantor, jointly and severally.

¶ 21    The court addressed the supplement in the second order. The court awarded landlord $6,823.50 of the requested $15,352.20 in additional attorney fees and $906.22 of the requested $1,359.33 in additional costs. The court arrived at these figures by concluding that the "in connection with" language in article 20 did not encompass "fees incurred to establish an award of attorney fees." Accordingly, the court declined to award landlord "those fees and costs that [were] related to [landlord]'s motions for fees and costs." As with the first order, the court did not refer to article 40(I) of the

8

lease or any provision of the guaranty in the second order. But in the second order, the court did not expressly award the additional attorney fees and additional costs jointly and severally against tenant and guarantor.

¶ 22    On appeal, landlord first contends that the court erred by reducing the fee request in the attorney fees motion by 50% because "a court may not substitute its judgment for that of a party aggrieved by a breach to mandate that it give up its rights under the contract to mitigate damages." Second, landlord contends that the court misinterpreted article 20 of the lease and erroneously ignored article 40(I) in concluding that landlord was not entitled to recover fees on fees. Third, all parties request an award of their respective appellate attorney fees.

## II.    Analysis

### A.    The Court Must Make Sufficient Findings to Support Any Reduction in the Fees Awarded to Landlord

#### 1.    Standard of Review

¶ 23    "We review a trial court's decision to award attorney fees for abuse of discretion." *Nesbitt v. Scott*, 2019 COA 154, ¶ 16, 457 P.3d 134, 137. "A trial court abuses its discretion if the award is

9

manifestly arbitrary, unreasonable, or unfair." *Id.* "Whether attorney fees are reasonable is a question of fact for the trial court; thus, we will not disturb its ruling on review unless patently erroneous and unsupported by the evidence." *Id.*

¶ 24    Landlord contends that we should review de novo the court's 50% reduction of the fees it requested in the attorney fees motion because "we review a trial court's interpretation of a contractual fee-shifting provision de novo." *Weinstein,* ¶ 8, 343 P.3d at 1046. We disagree because our analysis of the court's reduction of the amount of attorney fees awardable to landlord (unlike our analysis of landlord's request for fees on fees) does not require us to interpret the fee-shifting provisions of the parties' contracts.

¶ 25    The court premised its 50% reduction in landlord's attorney fees request on its assessment that "not all of the hours for which [landlord sought] reimbursement were reasonably expended" and that such reduction was "appropriate in consideration of the amount involved in this litigation and the results obtained." Accordingly, in slashing landlord's fee request in the attorney fees motion by 50%, the court was not interpreting a contractual fee-shifting provision but, rather, was engaging in a reasonableness

10

analysis, which we review for an abuse of discretion. *See Gomez v. Walker*, 2023 COA 79, ¶ 36, 540 P.3d 936, 944 ("The amount of costs awarded must be reasonable, and we will not disturb a court's findings as to reasonableness absent a showing of an abuse of discretion.").

## 2. Substantive Law

¶ 26     Courts determine the reasonableness of an attorney fees request through a two-step analysis. First, the court calculates a "lodestar amount," which "represents the number of hours reasonably expended on the case, multiplied by a reasonable hourly rate." *Weinstein*, ¶ 23, 343 P.3d at 1049 (quoting *Payan v. Nash Finch Co.*, 2012 COA 135M, ¶ 18, 310 P.3d 212, 217). Second, "[t]he trial court then has discretion to make upward or downward adjustments to the lodestar amount based on factors set forth in Colo. RPC 1.5(a)." *Id.* at ¶ 24, 343 P.3d at 1049. One such factor is "the amount involved and the results obtained." Colo. RPC 1.5(a)(4). Moreover, a court may only award a reasonable amount of attorney fees pursuant to a contractual fee-shifting provision, regardless of the provision's language. *See Weinstein*, ¶ 21, 343 P.3d at 1048-49 (rejecting the appellant's argument that it was

11

contractually entitled to an award of "all attorney fees and costs, without regard to whether they were reasonable").

¶ 27     In conducting its reasonableness analysis, a court should not impose its own views on the cost-effectiveness of the legal strategy that the party seeking the attorney fees chose to pursue. "Determining reasonableness of amounts sought . . . does not require [a] [c]ourt to assess independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic." *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 997 (Del. Ch. 2012). "For a [c]ourt to second-guess, on a hindsight basis, an attorney's judgment . . . is hazardous and should whenever possible be avoided." *Id.* (quoting *Arbitrium (Cayman Is.) Handels AG v. Johnston*, No. C.A. 13506, 1998 WL 155550, at *4 (Del. Ch. Mar. 30, 1998) (unpublished opinion)), *aff'd*, 720 A.2d 542 (Del. 1998).

¶ 28     Moreover, the court must make sufficient findings "to allow meaningful appellate review." *Brody v. Hellman*, 167 P.3d 192, 198 (Colo. App. 2007).

### 3. The Court Abused Its Discretion by Not Making Findings Sufficient for Us to Determine Whether Its 50% Reduction of Landlord's Attorney Fees Was Reasonable

¶ 29    We conclude that the court abused its discretion because it did not make sufficient findings for us to determine whether the record supports its 50% reduction in landlord's attorney fees request.

¶ 30    The court noted its agreement with tenant that "not all of the hours for which [landlord sought] reimbursement were reasonably expended under the rationale articulated in *Weinstein*." The court observed that, when landlord filed the case, tenant "was one of many Colorado companies facing staffing issues following the [COVID-19] pandemic" and that landlord "filed its lawsuit just nine days after posting its [d]emand on [tenant]'s door." In addition, the court said that, when landlord filed the lawsuit, "there were approximately 7.5 years left on the lease," tenant was "current on [its] rent," tenant "had committed to reopening," and tenant was "sincere in this commitment." The court further said that landlord "had multiple options available to it, but [landlord] chose to evict [tenant] and seek damages for the full amount of rent owed for the remainder of the 10-year term, after mitigation," resulting in "a

judgment of $157,058.59 in favor of [landlord] and against [tenant]."

¶ 31 The court said that, "[u]nder these circumstances," landlord's "litigation expenses were not, in their entirety, reasonably incurred for purposes of the lease's fee-shifting provisions." Further, the court said that, if landlord "had been required to pay its own fees, it would have been far more likely to pursue a course of action that would have avoided the vast majority of the damages [landlord] incurred."

¶ 32 Finally, when considering "the amount involved and the results obtained" — the fourth factor in the attorney fees reasonableness analysis under Colo. RPC 1.5(a) — the court said that, although landlord "had multiple options available to it," landlord "chose to evict [tenant] and seek damages for the full amount of rent owed for the remainder of the 10-year term, after mitigation." The court added:

> While the Court recognizes the value bargained for in the continuous use clause — *i.e.,* [tenant]'s closure left the shopping center without a modern-day staple of a shopping center: a coffee shop — there was no evidence of any monetary harm caused by [tenant]'s short-term breach of the continuous use

clause. [Landlord] succeeded in securing an award of future rent (after mitigation), but, as [the Kabod parties] note, the future rent became due as a direct result of [landlord]'s decision to evict [tenant] when other legal options were available. Based on the record before the Court, it is not at all clear that [landlord] is any better off for its decision to evict and seek future rent.

¶ 33 We cannot determine from the court's analysis whether it found that a certain portion of landlord's attorney fees was not reasonably incurred because it believed landlord should have pursued a more cost-effective legal strategy than an eviction lawsuit — which the court itself acknowledged would have been an improper basis for the fee reduction, as evidenced by the court's reference to *U.S. Welding, Inc. v. Advanced Circuits, Inc.*, 2018 CO 56, ¶ 10, 420 P.3d 278, 280 ("[I]t [is] simply . . . unreasonable and contrary to fundamental principles of contract law [for a court] to mandate that a party aggrieved by a breach give up its rights under the contract to mitigate its damages.") — or it believed that landlord's attorneys billed an excessive sum knowing that their client would not "bear the risk of paying its own fees." *Weinstein*, ¶ 16, 343 P.3d at 1048 (quoting *Kleinberg v. Radian Grp., Inc.*, No. 01 Civ. 9295, 2003 WL 22420501, at *4 (S.D.N.Y. Oct. 24, 2003)

(unpublished report and recommendation)). Indeed, the court's lack of findings renders the order ambiguous because the court acknowledged the proper legal standard but may not have applied it correctly. For example, in the first order, the court did not point to any time entries showing that landlord's attorneys performed work that "could have been done by a non-lawyer at a significantly lower rate" or reflecting "excessive and inefficient use of the attorney's time." *In re Green*, 11 P.3d 1078, 1088 (Colo. 2000). The court cited discrepancies and lack of specificity in some of landlord's attorney's billing records — but only when explaining its reasons for reducing landlord's attorney fees request by an additional 10%.

¶ 34    In sum, we cannot discern on what facts the court based its conclusion that landlord was seeking an unreasonable amount of attorney fees for successfully pursuing its chosen legal strategy. Accordingly, we remand the case to the court for additional findings on this issue.

### B. The Court Erred by Determining that Landlord Was Not Entitled to an Award of Fees on Fees

#### 1. Standard of Review

¶ 35    "[W]e review a trial court's interpretation of a contractual fee-shifting provision de novo." *Weinstein*, ¶ 8, 343 P.3d at 1046.

#### 2. Substantive Law

¶ 36    "The meaning of a contract is found by examination of the entire instrument and not by viewing clauses or phrases in isolation." *U.S. Fid. & Guar. Co. v. Budget Rent-A-Car Sys., Inc.*, 842 P.2d 208, 213 (Colo. 1992). "Unambiguous contract terms must be applied as written, according to their plain and ordinary meaning." *W. Stone & Metal Corp. v. DIG HP1, LLC*, 2020 COA 58, ¶ 10, 465 P.3d 105, 107; *see also USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997) ("It is axiomatic that in construing a document courts should not rewrite the provisions of an unambiguous document, but must enforce an unambiguous contract in accordance with the plain and ordinary meaning of its terms.").

3. **The Court Erred by Construing the Fee-Shifting Provisions
of the Lease to Bar Landlord from Recovering
the Attorney Fees and Costs It Incurred
in Enforcing Those Provisions**

¶ 37    In the second order, the court interpreted article 20 of the lease to mean that "fees incurred to establish an award of attorney fees [were] not incurred 'in connection with' any default under the lease," and, therefore, landlord was not entitled to an award of fees on fees.  In addition, the court declined to award landlord one-third of the costs that it requested in the supplement because they "were incurred in connection with the fees and costs request."  We agree with landlord that the court erred by interpreting the lease to mean that landlord was not entitled to recover the attorney fees and costs it incurred to enforce the fee-shifting provisions of the lease.

¶ 38    The court did not consider the sweeping fee-shifting language in article 40(I) of the lease, which entitles landlord to recover the attorney fees and costs it incurred in "any action or proceeding . . . [brought] to enforce or interpret the [lease's] provisions."  Articles 20(B) and 40(I) are, of course, lease provisions.  There is no dispute that, in this action, landlord sought to recover the attorney fees and costs it incurred in enforcing the contractual remedies to which the

lease entitled landlord upon tenant's default, including an award of its attorney fees and costs incurred in enforcing the fee-shifting provisions of the lease and the guaranty.

¶ 39    In the absence of Colorado cases on point, we look to out-of-state authorities for guidance on when a contractual fee-shifting provision entitles a prevailing party to recover the attorney fees and costs it incurred in enforcing that provision — fees on fees. (Although neither this court nor the supreme court has previously expressly addressed a party's entitlement to fees on fees, the Colorado appellate courts routinely award appellate attorney fees to parties who successfully defend an attorney fee award on appeal. *See, e.g.*, *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 390 (Colo. App. 2006) ("When a party is awarded attorney fees for a prior stage of the proceedings, it may recover reasonable attorney fees and costs for successfully defending the appeal."); *Vickery v. Evelyn V. Trumble Living Tr.*, 277 P.3d 864, 872 (Colo. App. 2011) ("A party awarded attorney fees in the district court may recover reasonable attorney fees and costs for successfully defending the appeal."). "Such an award, when authorized by statute, is to make the plaintiff whole.  This purpose would be frustrated if [the prevailing

party] had to pay attorney fees to defend [the] appeal." *In re Marriage of Turilli*, 2021 COA 151, ¶ 45, 507 P.3d 83, 90 (citation omitted).)

¶ 40    Courts disagree whether a prevailing party is entitled to an award of fees on fees based on a general fee-shifting provision. Some courts have held that such provisions allow the prevailing party to recover fees on fees. *See, e.g., Robbins v. MED-1 Sols., LLC*, 13 F.4th 652, 658-59 (7th Cir. 2021) (interpreting a fee-shifting provision entitling the prevailing party to recover its "costs of collection, including attorney[] fees and interest," to include an award of fees on fees because the provision "broadly . . . encompass[es] *all* costs associated with collection"); *Sidley Holding Corp. v. Ruderman*, No. 08 Civ. 2513, 2009 WL 6047187, at *23 (S.D.N.Y. Dec. 30, 2009) (unpublished report and recommendation) (concluding that a fee-shifting provision providing for reimbursement of a party's attorney fees incurred "to enforce any right" under the contract encompassed an award of the party's attorney fees incurred in preparing a fee request), *adopted*, 2010 WL 963416 (S.D.N.Y. Mar. 15, 2010) (unpublished memorandum and order); *Fid. Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, No. 93 C

4467, 1997 WL 308846, at *2 (N.D. Ill. June 3, 1997) (unpublished memorandum and order) (holding that contractual language allowing recovery of fees "incurred in connection with the enforcement" of the agreement was sufficiently broad to include an award of fees on fees); *Harder v. Foster*, 401 P.3d 1032, 1040-41 (Kan. Ct. App. 2017) (holding that the nondefaulting party was entitled to an award of fees on fees because it was "reasonably foreseeable that, should the defaulting party attempt to evade its duty to pay attorney fees, the nondefaulting party would incur even more attorney fees defending its rights under the contract"). Other courts read fee-shifting provisions more narrowly. *See, e.g., F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1266 (2d Cir. 1987) ("[A] general contract provision for the shifting of attorney[] fees does not authorize an award of fees for time spent in seeking the fees themselves.").

¶ 41     But even courts in those jurisdictions that follow the latter approach will award fees on fees if the underlying contract provides for fee awards in proceedings to enforce the contract's provisions — including the contract's fee-shifting provisions. For example, in *Chase v. Bearpaw Ranch Ass'n*, the Montana Supreme Court

21

considered whether the prevailing party was entitled to recover fees on fees pursuant to a contract clause saying that, "[i]n any action of any kind for the enforcement of the Covenants, Conditions, and Restrictions, if the relief prayed for is granted in whole or in part, the applicant for relief shall be entitled to recover necessary court Costs [sic] for the action, including reasonable attorney[] fees." 2006 MT 67, ¶ 25, 133 P.3d 190, 197. After noting that "[c]ontractual fee-shifting provisions are a recognized exception to the American Rule," *id.* at ¶ 29, 133 P.3d at 199, the Montana court explained that "[t]he terms of the contract necessarily dictate the scope of the exception and fee-shifting occurs only to the extent that the contracting parties clearly intended," *id.* The court noted that the fee-shifting provision at issue was "strikingly similar" to the provision at issue in *Krumme v. WestPoint Stevens Inc.*, 79 F. Supp. 2d 297 (S.D.N.Y. 1999), *rev'd on other grounds*, 238 F.3d 133 (2d Cir. 2000), in which the court awarded fees on fees. *Chase*, ¶ 30, 133 P.3d at 199.

¶ 42    The fee-shifting clause in *Krumme* provided that

> [i]f . . . there should arise any dispute as to the
> validity, interpretation or application of any
> term [or] condition of this Agreement . . . [the

> breaching party] agrees . . . to provide sums sufficient to pay on a current basis . . . [the nonbreaching party]'s costs and reasonable attorney[] fees . . . incurred by [the nonbreaching party] in connection with any dispute or litigation.

79 F. Supp. 2d at 300. The *Krumme* court concluded that, because the parties disputed the terms of the fee-shifting provision, the plaintiffs were "entitled to recover legal costs in connection with the litigation of those issues" to the extent that "plaintiffs' fee requests include[d] expenses incurred in litigating the terms of the attorney[] fees provision." *Id.* at 313.

¶ 43    In *Chase*, the court concluded that, because the fee-shifting provision was a "Condition" of the subject contract, "[l]itigation over the *entitlement* to fees *under the contract* is properly construed as an action for the enforcement of a condition contained in the [contract]." *Chase*, ¶ 31, 133 P.3d at 199.

¶ 44    But like the *Krumme* court, the Montana Supreme Court further concluded that the prevailing party was not entitled to an award of the attorney fees it incurred to establish the *amount* of attorney fees to which it was entitled. *Chase*, ¶ 32, 133 P.3d at 199; *Krumme*, 79 F. Supp. 2d at 313 (noting that the subject fee-

shifting provision lacked "specific language that would allow the plaintiffs to recover the costs of collecting an award of reasonable attorney[] fees"). The Montana Supreme Court reasoned that "[f]ees incurred in establishing the *amount* of 'reasonable attorney[] fees' . . . are not compensable under the contract" because a dispute over the reasonableness of the fees that the prevailing party incurred "is not properly construed as an action for enforcement of a 'Condition' included in" the parties' contract. *Chase*, ¶ 32, 133 P.3d at 199. "Instead, it is a dispute over the interpretation of a generic term of the [contract] and a factual dispute over the necessity of particular fee claims. As such, the contract itself does not provide for recovery of fees incurred in establishing the *amount* of attorney fees reasonably incurred by" the prevailing party. *Id.* (footnote omitted).

¶ 45 In weighing these conflicting authorities, we consider the purpose of contractual fee-shifting provisions — to ensure the nonbreaching party is made whole if it is required to engage counsel to enforce its rights upon the other party's breach. *See Robbins*, 13 F.4th at 659; *Walton v. Claybridge Homeowners Ass'n*, 825 N.E.2d 818, 825 (Ind. Ct. App. 2005). As the Colorado Supreme Court

noted, "The purpose of a contractual attorney fee-shifting provision . . . is to deter parties from breaching the contractual agreement." *Dennis I. Spencer Contractor, Inc. v. City of Aurora*, 884 P.2d 326, 333 n.14 (Colo. 1994). Not awarding attorney fees to the nonbreaching party under such circumstances "would render meaningless the fee-shifting provision in the [contract] to which the parties stipulated, and which the parties intended to enforce. Such a result would encourage parties to breach contractual agreements and would cause unwarranted litigation." *Id.*

¶ 46 A party compelled to file suit to enforce its contractual rights would not be made whole if, at the conclusion of the litigation, it prevailed but nonetheless faced a legal bill for attorney fees and costs that it would not have incurred absent the breach. A broad fee-shifting provision, such as article 40(I) of the lease, would be illusory if it did not allow the nonbreaching party to recover all of its attorney fees and costs associated with the breach. *See id.*

¶ 47 Article 40(I) entitles the prevailing party to recover the attorney fees and costs it incurred in pursuing "any action or proceeding . . . to enforce or interpret the [lease's] provisions." Landlord's claim for enforcement of the fee-shifting provisions of the lease, which

necessarily encompassed the parties' dispute regarding the reasonableness of landlord's attorney fees, falls within the scope of an "action or proceeding . . . [brought] to enforce or interpret the [lease's] provisions." Article 40(I) thus mandates an award to landlord of the reasonable attorney fees and costs it incurred in obtaining an award of the attorney fees and costs it incurred in obtaining the judgment against the Kabod parties and in defeating their counterclaim. *See, e.g., Robbins,* 13 F.4th at 658-59; *Sidley Holding Corp.,* 2009 WL 6047187, at *23; *Fid. Mut. Life Ins. Co.,* 1997 WL 308846, at *2; *Harder,* 401 P.3d at 1040-41; *see also Dennis I. Spencer Contractor,* 884 P.2d at 333 n.14.

¶ 48    Accordingly, we hold that the court erred by denying landlord the attorney fees it incurred in enforcing the lease's fee-shifting provisions and by awarding landlord only two-thirds of the amount of costs landlord sought.

¶ 49    Because the court concluded that article 20 did not authorize an award of fees on fees, it did not make findings on the reasonableness of the attorney fees and costs landlord sought in the supplement. Accordingly, we remand for a determination of whether the amount of those attorney fees and costs is reasonable.

26

¶ 50   In addition, although the court did not analyze the fee-shifting language of the guaranty in either the first or the second order, we note that paragraph 8 of the guaranty provides that guarantor is "jointly and severally" liable with tenant for "all costs and expenses, including reasonable attorney[] fees, incurred by [l]andlord in connection with the protection, defense or enforcement of this [g]uaranty." In addition, paragraph 2 of the guaranty specifies that guarantor is "absolutely, unconditionally, and irrevocably" liable for "the performance by [t]enant of all obligations of [t]enant under the [l]ease."

¶ 51   The language of these provisions means that landlord can look to guarantor to collect all sums that a court awards to landlord against tenant. *See Highlands Ranch Univ. Park, LLC v. Uno of Highlands Ranch, Inc.*, 129 P.3d 1020, 1024-25 (Colo. App. 2005) ("Unless expressly agreed otherwise, a guarantor's liability is generally coextensive with that of the principal."); *Whitestone Plaza, LLC v. Shen*, 220 N.Y.S.3d 390, 392 (App. Div. 2024) (holding that landlord made a "prima facie showing of its entitlement to judgment as a matter of law" because the guaranty specified that guarantor "unconditionally, absolutely, and irrevocably guaranteed" the

tenant's obligations under the lease). Thus, under the plain meaning of paragraphs 2 and 8 of the guaranty, guarantor is jointly and severally liable with tenant for the attorney fees and costs that landlord incurred in obtaining the underlying award of attorney fees and costs. *See Whitestone Plaza,* 220 N.Y.S.3d at 392; *Highlands Ranch Univ. Park,* 129 P.3d at 1024-25.

¶ 52 The Kabod parties argue that, even if we "were to find that fees for [landlord's] application were recoverable under the contract, [we] should still uphold the trial court's determination that fees for the attorney fee[s] application should not be awarded, based on the [court's] finding that 50% of [landlord]'s fee request was unreasonable." We reject this argument given our conclusion that the court abused its discretion by not making sufficient findings for us to determine whether it erred by reducing landlord's requested attorney fees by 50%.

### C. Landlord Is Entitled to an Award of Its Reasonable Appellate Attorney Fees and Costs

¶ 53 Landlord asserts that the lease entitles it to an award of the attorney fees and costs it incurred on appeal. We agree.

¶ 54    Landlord filed this appeal to enforce the lease's fee-shifting provisions, and it is the prevailing party in this appeal.  In *Tremitek, LLC v. Resilience Code, LLC*, a division of this court held that a landlord that had sued a tenant for breach of the lease was entitled to an award of its appellate attorney fees pursuant to two fee-shifting provisions in the lease containing substantially similar language to that in articles 20(B) and 40(I) of the lease in this case. 2023 COA 54, ¶¶ 54-56, 535 P.3d 1005, 1015.  The division explained that, "[b]ecause this action is one 'to enforce or interpret the provisions' of the lease and landlord is the prevailing party, we award landlord its reasonable attorney fees incurred on appeal."  *Id.* at ¶ 56, 535 P.3d at 1015.  Accordingly, landlord is entitled to recover from tenant its appellate attorney fees and costs under articles 20(B) and 40(I) of the lease.  *See id.*; *Weinstein*, ¶ 40, 343 P.3d at 1051; *Butler v. Lembeck*, 182 P.3d 1185, 1193 (Colo. App. 2007) (awarding the prevailing party reasonable attorney fees, including the attorney fees "incurred in prosecuting th[e] appeal," pursuant to a contractual fee-shifting provision).  And for the reasons noted above, landlord is entitled to recover such attorney

fees and costs from guarantor pursuant to paragraphs 2 and 8 of the guaranty.

¶ 55 Because we conclude that the lease and the guaranty entitle landlord to an award of its appellate attorney fees and costs, we need not address landlord's argument that it is also entitled to an attorney fees award under C.A.R. 38(b) and section 13-17-102(2).

¶ 56 The Kabod parties also request an award of their appellate attorney fees and costs under article 40(I) of the lease. We deny that request because the Kabod parties did not prevail in this appeal.

## III. Disposition

¶ 57 The court's determination that landlord is entitled to an award of its attorney fees and costs incurred in obtaining its judgment against tenant and guarantor is affirmed. The court's determination of the amount of those attorney fees and costs is reversed. The case is remanded to the court for additional findings regarding the reasonableness of the attorney fees and costs that landlord incurred in successfully pursuing its chosen legal strategy and regarding the reasonable amount of fees on fees to which

landlord is entitled against tenant and guarantor, jointly and severally.

¶ 58    In addition, landlord is awarded its appellate attorney fees and costs against tenant and guarantor, jointly and severally.  On remand, the court must determine the amount of landlord's reasonable appellate attorney fees and costs.

JUDGE JOHNSON and JUDGE MOULTRIE concur.